Thomas J. KELLY, a registered elector from U.S. Congressional District 8 in Orange County, Florida, Plaintiff–Appellant,

v.

Katherine HARRIS, as Secretary of State of the State of Florida, and as an individual, Sandra Mortham, Secretary of the State of Florida, and as an individual, et al., Defendants–Appellees.

No. 02–14858.

United States Court of Appeals, Eleventh Circuit.

May 22, 2003.

---

Frederic Bennett O'Neal, Frederic B. O'Neal, P.A., Orlando, FL, for Plaintiff–Appellant.

George L. Waas, Dept. of Legal Affairs, Karen A. Gievers, Tallahassee, FL, Thom-

as W. Brooks, Meyer & Brooks, P.A., Tallahassee, FL, for Defendants–Appellees.

Before BLACK, RONEY and STAPLETON *, Circuit Judges.

BLACK, Circuit Judge:

Thomas J. Kelly appeals the district court's dismissal of his action against the current and former chairpersons of the Florida Democratic Party, the current and former Secretaries of the State of Florida,[1] and United States Senator Bob Graham.[2] The district court concluded Appellant lacked standing because he was a registered Republican who could not vote in the Florida Democratic Party's primary elections. We affirm.

## I. BACKGROUND

Appellant is a registered Republican who was elected or appointed to an executive committee office for the Republican party. After accepting the position, Appellant was asked to sign a party loyalty oath and was informed that he could not serve on the committee if he did not sign the oath.

Appellant subsequently learned the Florida Democratic Party's bylaws required its members to sign a similar oath, and he brought this action under 42 U.S.C. §§ 1983 and 1985(3) to challenge the party's loyalty oath. According to his

---

* Honorable Walter K. Stapleton, United States Circuit Judge for the Third Circuit, sitting by designation.

1. The Florida Secretaries of State have not participated in this appeal, though Appellant's notice of appeal included the district court order granting those defendants' motions to dismiss. The district court dismissed Appellant's claims against them on the same grounds as it dismissed his claims against the Democratic Party defendants. The Democratic Party defendants' brief adequately addresses the legal issues Appellant raises in his appeal of both district court orders.

2. Appellant failed to effect service of process on Senator Graham, and his complaint against Senator Graham was dismissed pursuant to Fed.R.Civ.P. 4(m).

complaint, in 1970 the Florida Legislature repealed a portion of FLA. STAT. ch. 99.021, which required all political candidates for public office to sign a party loyalty oath. In 1983, Florida Attorney General Jim Smith issued an opinion to Charles Whitehead, then-Chairman of the Florida Democratic Party's Executive Committee, in response to Whitehead's query into the propriety of a loyalty oath as a qualification for the party's nomination to public office. *See* Op. Atty' Gen. 83–74 (Oct. 21, 1983). Attorney General Smith concluded § 99.021 did not authorize the Florida Democratic Party to require a loyalty oath. Despite this opinion, sometime between 1983 and 1985, the Florida Democratic Party adopted a loyalty oath as part of its bylaws and began requiring all candidates in the Democratic primaries to sign the oath.

Appellant claims that, because the loyalty oath has not been authorized by the Florida Legislature, it constitutes an improper limitation on the time, place, or manner of holding elections. *See* U.S. CONST. art. I, § 4, cl. 1 ("The Times, Places and Manner of holding Elections for Senators and Representatives, shall be prescribed in each State by the Legislature thereof; but the Congress may at any time by Law make or alter such Regulations, except as to the Places of Chusing Senators.").

## II. DISCUSSION

Despite his Republican Party affiliation, Appellant asserts he has standing to challenge the Florida Democratic Party's loyalty oath because it allegedly restricts the kind of candidates he will have the opportunity to vote for in the general election. Appellant complains that the oath effectively limits the slate of candidates in the general election to "party loyalists" only, while he desires the opportunity to vote for "free-thinking mavericks, like Senators McCain of Arizona and Miller of Georgia."

■ The first principle governing the jurisdiction of the federal courts is that federal courts are courts of limited rather than general jurisdiction. *Aldinger v. Howard,* 427 U.S. 1, 15, 96 S.Ct. 2413, 2420, 49 L.Ed.2d 276 (1976). This principle is so crucial to our constitutional understanding of the judicial branch that federal courts always have an obligation to examine *sua sponte* their jurisdiction before reaching the merits of any claim. *Region 8 Forest Serv. Timber Purchasers Council v. Alcock,* 993 F.2d 800, 807 n. 9 (11th Cir.1993). Among other limitations, the federal courts' jurisdiction is circumscribed by Article III's case or controversy requirement. U.S. CONST. art. III, § 2, cl. 1; *Ala. Power Co. v. U.S. Dep't of Energy,* 307 F.3d 1300, 1308 (11th Cir.2002). There are several doctrines that elaborate upon Article III's requirements for jurisdiction. The doctrine of standing is most central. *Wooden v. Bd. of Regents of the Univ. Sys. of Ga.,* 247 F.3d 1262, 1273 (11th Cir.2001) ("Perhaps the most important of the Article III doctrines grounded in the case-or-controversy requirement is that of standing."). Other doctrines, such as mootness and ripeness, can be understood by reference to the doctrine of standing. *See, e.g.,* 13 WRIGHT, MILLER & COOPER, FEDERAL PRACTICE & PROCEDURE: JURISDICTION 2D § 3531 (1984) ("Both ripeness and mootness, indeed, could be seen as providing time-bound perspectives on the injury inquiry of standing.").

■ Standing is an irreducible minimum necessary under Article III's case-or-controversy requirement. *Alabama Power,* 307 F.3d at 1308. To have standing, a plaintiff must show (1) he has suffered an injury in fact that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury

is fairly traceable to conduct of the defendant; and (3) it is likely, not just merely speculative, that the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992); *see also Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81, 120 S.Ct. 693, 704, 145 L.Ed.2d 610 (2000); *Women's Emergency Network v. Bush*, 323 F.3d 937, 943 (11th Cir.2003).

■ We review *de novo* a dismissal for lack of standing. *Smith v. Shook*, 237 F.3d 1322, 1324 (11th Cir.2001).

■ Appellant cannot establish any injury under the facts as he has plead them. Two possible injuries can be immediately rejected. First, Appellant does not allege that he has been excluded from a Democratic primary ballot or party office. Such an alleged injury would surely satisfy the requirement of an injury in fact, yet Appellant makes no such allegation. Second, Appellant has not been injured with respect to his ability to vote in the Florida Democratic Party primary. Again, such an alleged injury would supply the necessary injury in fact, but as a registered Republican, Appellant is not eligible to vote in a Democratic primary to choose Democratic nominees for Congressional offices.[3]

Appellant's complaint focuses on the general election, where he argues his choices are constrained by the effects of the Democratic Party loyalty oath. Even in a general election, however, there is no possible injury in fact. Appellant remains free in the general election to vote for independent or third-party candidates who have not signed any party's loyalty oath, including possible write-in candidates.[4] Appellant's argument that no write-in or third-party candidates qualified for a recent election is beside the point; Appellant suffers no cognizable injury from the mere absence of an alternative candidate on the ballot.

In addition, Appellant lacks standing under the causation or redressability elements, which are often interconnected. *See* 13 WRIGHT, MILLER & COOPER § 3531.5 ("The connection [of causation] to remedial benefit often is very practical—if the injury is not caused by the challenged acts, an order directed to them will not redress it."). Appellant claims he has been injured because "party loyalists" always appear on the ballot in the general election; he would prefer the opportunity to vote for maverick, free-thinking candidates. There is nothing to indicate, however, that the loyalty oath causes Appellant's alleged injury; the supposed curtailment of Appellant's general election options is not fairly traceable to the loyalty oath. Considered another way, there is no reason to believe the abolition of the Florida Democratic Party's loyalty oath would result in anyone other

---

**3.** Nor is this a case in which the Appellant can claim his right to vote is being diluted, *see Baker v. Carr*, 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962), nor that he is being denied to the right to join others in seeking ballot access for the candidate of his choice. *See Cartwright v. Barnes*, 304 F.3d 1138 (11th Cir.2002); *Duke v. Massey*, 87 F.3d 1226 (11th Cir.1996). Indeed, Appellant does not allege that he wishes to vote for whomever the nominee of the Democratic Party may turn out to be.

**4.** Appellant responds that even write-in candidates and third-party candidates must qualify just like other major party candidates, pursuant to FLA. STAT. ch. 99.061. Section 99.061 does not reveal a potential injury in fact, however, because nothing in that section requires a write-in or other candidate to sign or affirm a party loyalty oath like the Florida Democratic Party's oath. The single reference to a "loyalty oath" in § 99.061(7)(a)(3) is to the completely different public employees oath mandated by FLA. STAT. ch. 876.05.

than a party loyalist prevailing in the Democratic primary and appearing as the Florida Democratic Party's candidate in the general election. A court order striking the loyalty oath from the Florida Democratic Party's bylaws will not redress Appellant's alleged injury.

We therefore conclude Appellant lacks standing because he cannot satisfy any of the constitutional requirements for a case or controversy. The district court did not err in granting the defendants' motions to dismiss.[5]

AFFIRMED.

---

5. The district court concluded in the alternative that, even if Appellant had standing, his complaint did not state a claim on which relief could be granted. The district court based this alternative ruling on the Florida Democratic Party's constitutionally-protected associational rights. We do not address the issue of a political party's associational rights in the context of a challenge predicated on Article I, § 4 of the Constitution. *Cf. Cal. Democratic Party v. Jones,* 530 U.S. 567, 602–03, 120 S.Ct. 2402, 2422–23, 147 L.Ed.2d 502 (2000) (Stevens, J., dissenting) (questioning but not resolving the possible relevance of a potential violation of Article I, § 4 for a political party's associational rights).